IN THE UNTIED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF FLORIDA

CASE NUMBER:

DOMESTIC HOLDINGS, L.C., a State of Utah
Limited Liability Company,

      Plaintiff,

vs.

BEAUTIFULLY PASSIVE, LLC,
a State of Florida Limited Liability Company,
and KELLY JURADO, individually,


      Defendants.

## COMPLAINT FOR DAMAGES AND OTHER RELIEF

Plaintiff, DOMESTIC HOLDINGS, L.C., a State of Utah Limited Liability Company, (hereinafter "Plaintiff"), by and through the undersigned counsel and law firm, hereby sues the Defendants, BEAUTIFULLY PASSIVE, LLC (hereinafter "BP"), a State of Florida Limited Liability Company, and KELLY JURADO (hereinafter "JURADO"), individually, (hereinafter collectively as "Defendants"), individually and alleges:

## PARTIES, JURISDICTION AND VENUE

1.      Plaintiff, at all times material hereto, is a State of Utah Limited Liability Company with its principal place of business in Salt Lake City, Utah.

2.      At all times material hereto, Giovanni Heward ("Mr. Heward"), is the owner of Plaintiff and at all material times hereto was acting in his role as an authorized representative of Plaintiff.

3.     Defendant BP is a State of Florida Limited Liability Company with its principal place of business in Palm Beach County, Florida.

4.     Defendant, JURADO, at all times material hereto, is a resident of the State of Florida who upon information and belief, at all material times hereto was the managing member and the CEO of BP, resides in Palm Beach County, Florida, and is otherwise *sui juris*.

5.     This Court has jurisdiction over this matter Pursuant to 28 U.S.C. § 1332(a)(1) as the matter in controversy exceeds the sum or value of $75,000.00, and there exists complete diversity of citizenship between Plaintiff and Defendants

6.     Venue is proper as the signing of the subject contract and payment was made in Palm Beach County, Florida.

<u>**FACTUAL ALLEGATIONS**</u>

7.     In September of 2019, a representative of BP identifying himself as Nick Stephenson, made an unsolicited call to Mr. Heward claiming he obtained Mr. Heward's name from a list of venture capitalists. During this initial phone call, BP's representative stared BP offers busines opportunity for people like Mr. Heward which would require no effort on Mr. Heward's part and would produce passive monthly income in an amount totaling in the thousands of dollars.

8.     BP's agent represented the business opportunity involved the placement of various cosmetic machines in spas and salons and the training of staff at the spas in the use of the machines; whereby Mr. Heward would receive a fee every time a technician at the spa used the machine on a patron of the spa.

9.     On September 10, 2019, BP's representative emailed Mr. Heward stating "[t]his is the only business that you can earn a six-figure income without over exerting [sic] yourself and



really help shape or enhance your financial future." *See* E-mail dated September 10, 2019 attached hereto and marked as "Exhibit A."

10.    Specifically, BP's agent represented that the prospective benefits of working with BP were:

a.  Full training provided to spas and salons helping them become experts in efficiently using the equipment;

b.  Full warranty and support;

c.  A growing and lasting database of clients;

d.  A simple checking of usage timer logs on the equipment and collection of weekly profits; and

e.  An instant return on investment.

11.    On September 13, 2019, another BP representative identifying himself as Malcolm Mullay (hereinafter "Mullay"), for and on behalf of BP, provided names and contacts of two individuals whom allegedly had worked with BP in the past and were willing to share their experiences and success working with BP and provided Mr. Heward with contact information for a Ms. Lisa Ryder and a Mr. Charlie Carter. *See* Text Messages attached hereto and marked as "Exhibit B."

12.    BP agents continued to contact Mr. Heward, texting him on September 18, 2019, and again on September 21, 2019, and once again on September 30, 2019, to follow-up with Mr. Heward regarding the business opportunity BP could provide. *See* Text Messages attached hereto and marked as "Exhibit B."



13.     On November 8, 2019, Mr. Heward reached out to BP of his renewed interest in the BP business opportunity as represented and inquired whether there were any promotions BP could offer. *See* Text Messages attached hereto and marked as "Exhibit B."

14.     On November 11, 2019, Mr. Heward provided BP's agent with the name and address of his Limited Liability Company in Utah, DOMESTIC HOLDINGS L.C., which Mr. Heward intended to sign the contract for the transaction on his behalf. *See* Text Messages attached hereto and marked as "Exhibit B."

15.     On November 15, 2019, Mr. Heward, for and on behalf of Plaintiff, e-mailed who he believed was an employee of BP appraising of his efforts to obtain financing and notifying BP that he had applied with Bankers Healthcare Group for the $50,000.00 loan to purchase the machines from BP. *See* E-mail from Kelly Spencer to Mr. Heward dated November 15, 2019 attached hereto and marked as "Exhibit C."

16.     On November 18, 2019, a representative of BP sent Plaintiff, through Mr. Heward, a Sales Agreement (hereinafter "Agreement") via e-mail as well as a video of the Cryolipolysis machine, subsequently forwarding a revised copy of the Agreement due to a typo on the same. *See* Email from Mullay dated November 18, 2019 attached hereto and marked as "Exhibit D."

17.     The Agreement provided that the Agreement had to be signed by both Parties and returned to BP on November 22, 2019. *See* Agreement attached hereto and marked as "Exhibit E."

18.     The Agreement provided that the parties signing the agreement warrant and represented that the person signing the Agreement was authorized to sign the same on the date of



the Agreement "by all necessary and appropriate corporate action to execute the Agreement." *See* Agreement attached hereto and marked as "Exhibit E."

19.    The Agreement was signed and dated by a "Managing Member" of BP on November 18, 2019, even though BP was not an existing entity authorized to do business in the State of Florida on November 18, 2019.

20.    The Agreement, further stated, *inter alia*:

   a.  Plaintiff agreed to purchase three (3) Cryolipolysis machines (Model BP-CRYO-530) for $50,000.00;

   b.  BP warranted delivery to the zip code requested by Mr. Heward;

   c.  BP would be responsible for all shipping, installation, and transit insurance costs;

   d.  The Cryolipolysis machines were guaranteed to be delivered and placed in good and operational order within 45 to 90 days of the execution of the Agreement;

   e.   BP would be responsible for funding and placing the machines in salons and spas;

   f.  BP would be responsible for training salon/spa employees in how to use the Cryolipolysis machines and;

   g.  BP fully warranted all the machines supplied under the Agreement for a period of thirty-six (36) months.

*See* Agreement attached hereto and marked as "Exhibit E."

21.    On November 29, 2019, BP sent wiring instructions to Plaintiff via e-mail to Heward.



22.     On December 2, 2019, Plaintiff transferred $50,000.00 to BP via the account provided in the wiring instructions from BP. *See* Chartway Federal Credit Union Wire Transfer Request dated December 2, 2019 attached hereto and marked as "Exhibit F."

23.     Later that day, BP provided a receipt No. 2179 to Plaintiff, evidencing and confirming receipt of the $50,000.00 transferred to BP from Plaintiff to satisfy the sales price per the Agreement. *See* Receipt #2179 dated December 2, 2019 attached hereto and marked as "Exhibit G."

24.     On January 24, 2020, Plaintiff contacted BP as to the status of the placements of the machines as contracted. BP responded on January 27, 2020, notifying Plaintiff that BP was still attempting to find viable locations and did not have any placements at that moment. Plaintiff immediately followed up regarding the manufacturing and delivery of the machines to which BP failed to reply. *See* Text Messages dated January 24, 2020 by and between Mr. Heward and Taylor attached hereto and marked as "Exhibit H."

25.     On February 25, 2020, Plaintiff received an e-mail from BP, purporting to update Plaintiff on the status of the shipment of the machines, stating that 70-80% of the production was done but they were unable to ship the machines at that time "due to health risk being regulated by the governments." BP further represented that "[s]hipments by water [were] predicted for the 10th of March. *See* E-mail dated February 12, 2020 from BP to Plaintiff attached hereto and marked as "Exhibit I."

26.     On the same day, February 25, 2020, Plaintiff received another e-mail from BP purporting to update Plaintiff on the status of the shipment of the machines, stating that Shenzeng city, the source location of the machines, was still under lock-down because of the



Coronavirus. *See* E-mail dated February 25, 2020 from BP to Plaintiff attached hereto and marked as "Exhibit J."

27.    On February 26, 2020, Plaintiff received yet another e-mail from BP, forwarding a message addressed to a "Joseph" from an alleged source in Shenzeng stating that the machines were secretly being tested at night in defiance of government Coronavirus lockdowns, and were ready for shipment and awaiting packing. The source further stated the machines would be shipping soon. *See* E-mail dated February 26, 2020 from BP to Plaintiff attached hereto and marked as "Exhibit K."

28.    On March 5, 2020, Plaintiff received another e-mail from BP thanking Mr. Heward for Plaintiff for his patience and explaining BP is catching up fast and has already placed nine other machines with another investor who had already seen results. *See* E-mail dated March 5, 2020 from BP to Plaintiff attached hereto and marked as "Exhibit L."

29.    On March 13, 2020, Plaintiff received an e-mail titled "Coronavirus Won't Stop Us" from BP, stating that two additional spas had completed training with the machines that week, amidst the COVID-19 pandemic, and had also began generating revenue for their owner. BP further advised that Plaintiff was to be next in regard to the placement and training. *See* E-mail dated March 13, 2020 from BP to Plaintiff attached hereto and marked as "Exhibit M."

30.    On March 17, 2020, Plaintiff received another e-mail from BP stating that a shipment of machines was on its way to the United States from Shenzeng and that BP was still working on placing the machines. *See* E-mail dated March 17, 2020 from BP to Plaintiff attached hereto and marked as "Exhibit N."

31.    On March 18, 2020, which was 107 days after Plaintiff paid BP pursuant to the Agreement, Plaintiff received an e-mail from BP, notifying Plaintiff that the machine shipment



was on its way and BP excepted it to arrive by the end of March 2020. *See* E-mail dated March 18, 2020 from Kendra to Mr. Heward attached hereto and marked as "Exhibit O."

32.     After March 18, 2020, neither Plaintiff nor Mr. Heward received any additional communication from BP or its agents.

33.     To date, Plaintiff has not received any further update as to the delivery or placement of the three Cryolipolysis machines pursuant to the Agreement.

34.     Upon information and belief, BP, acted at the direction of JURADO, knowingly took and received payment from Plaintiff under the terms of the Agreement without having the be ability or intention to deliver or place the machines as stipulated in the Agreement.

35.     On March 20, 2020, the undersigned counsel and law firm sent a Civil Theft Notice pursuant to section 772.11 of the Florida Statutes to BP and JURDANO. *See* Civil Theft Notice and Demand attached hereto and marked as "Exhibit P."

36.     BP failed to respond within the thirty-day time period provided by section 772.11 of the Florida Statutes, entitling Plaintiff to treble damages, attorney's fees and costs should it prevail in this action.

37.     As a result of the actions alleged herein, Plaintiff has retained the services of the undersigned legal counsel and law firm to pursue this action and by doing so is obligated to pay said counsel and firm for reasonable fees and costs of litigation.

38.     JURADO did not incorporate BP until January 31, 2020, and knowing BP was not yet incorporated, acted  or purporting to act on behalf of BP by contacting Mr. Hewart of Plaintiff in September 2019 regarding a business opportunity BP was offering,  entering into the Agreement with Plaintiff on November 18, 2019, and accepting $50,000.00 from Plaintiff on



December 2, 2019 and therefore JURADO is jointly and severally liable with BP to Plaintiff for all damages incurred cause by such actions.

39.     All conditions precedent to the bringing of this action have been performed, waived, or otherwise excused.

## COUNT I - CIVIL THEFT

40.     Plaintiff repeats and re-alleges all the allegations contained in paragraphs 1 through 39 as if fully incorporated herein.

41.     On November 20, 2019, Plaintiff entered into the Agreement with BP for the purchase of the Cryolipolysis machines and accompanying placement, installation, and training pursuant to the Agreement.

42.     Plaintiff paid $50,000.00 to BP pursuant to the terms of the Agreement for the items and services listed on the Agreement and BP received and sent Plaintiff a receipt confirming BP received and accepted Plaintiff's $50,000.00 on December 2, 2019.

43.     After receiving and accepting $50,000.00 from Plaintiff, BP made affirmative representations and engaged in deceptive acts or contrivances intending to deceive Plaintiff and avoid suspicion regarding BP's felonious intent to keep and deprive $50,000.00 belonging to Plaintiff for BP's own use.

44.     On March 20, 2020, via certified and U.S. Mail, Plaintiff sent BP and JURDANDO a Civil Theft Notice and Demand Letter pursuant to section 772.11 of the Florida Statutes. *See* Civil Theft Notice and Demand attached hereto and marked as "Exhibit P."

45.     Defendants have wrongfully deprived Plaintiff of its $50,000.00 through an intricate and sophisticated scheme of deceit and theft.



46.     As Defendants have failed and otherwise ignored any and all demands from Plaintiff to return the $50,000.00 paid by Plaintiff to BP, Plaintiff is entitled to treble damages in the amount of $150,000.00, in addition to attorney's fees and costs.

47.     As a direct and proximate cause of the foregoing actions of the Defendants, Plaintiff has been damaged.

48.     The acts of the Defendants as more fully alleged herein were willful, wanton, malicious, and criminal in nature, evidencing a complete disregard of Plaintiff's rights.

**WHEREFORE**, Plaintiff, DOMESTIC HOLDINGS, L.C respectfully requests judgment in its favor and against Defendants, BEAUTIFULLY PASSIVE, LLC and JURADO, jointly and severally, for treble damages in the amount of $150,000.00 and attorney's fees and costs pursuant to section 772.11 of the Florida Statutes, compensatory damages, consequential damages, prejudgment and post-judgment interest, and for further relief this Court deems just, equitable and proper.

## COUNT II—BREACH OF CONTRACT

49.     Plaintiff repeats and re-alleges all the allegations contained in paragraphs 1 through 39 as if fully incorporated herein.

50.     Plaintiff entered into a valid Agreement with BP whereby BP agreed to sell and accepted payment in the amount of $50,000.00 from Plaintiff in exchange for three (3) Cryolipolysis machines (Model BP-CRYO-53) to be delivered, at BP's expense, and placed in operational order within 45 to 90 days of the date of the execution of the Agreement.

51.     On March 18, 2020, 107 days after execution of the Agreement BP represented to Plaintiff, that all Cryolipolysis machines would be delivered to their placement facilities by the end of March 2020.



52.     BP failed to deliver the machines thereby further failed to find placement for the machines or perform any of its obligations pursuant to the Agreement thereby materially breaching the Agreement.

53.     Plaintiff has suffered damages cause by BP's material breaches of the Agreement.

54.     The Plaintiff is entitled to attorney's fees and costs pursuant to section 8(G) of the Agreement and section 57.105(7) of the Florida Statutes.

**WHEREFORE**, Plaintiff, DOMESTIC HOLDINGS, L.C. respectfully requests judgment in its favor and against Defendants, BEAUTIFULLY PASSIVE, LLC and JURADO, jointly and severally, for compensatory damages, consequential damages, prejudgment and post-judgment interest, attorney's fees and costs, and for such other and further relief this Court deems just, equitable and proper.

<u>**COUNT III—FRAUD IN THE INDUCEMENT**</u>

55.     Plaintiff repeats and re-alleges all the allegations contained in paragraphs 1 through 39 as if fully incorporated herein.

56.     This is an action for damages in excess of $75,000.00 exclusive of interest and costs of court.

57.     In September 2019, BP made the following false misrepresentations of material fact to Plaintiff:

        a.      Full training provided to spas and salons helping the salon staff to become experts in efficiently using the equipment;

        b.      Full warranty and support for all equipment;

        c.      A growing and lasting database of clients;



  d.  A simple checking of usage timer logs on the equipment and collection of weekly profits and;

  e.  An instant return on investment with little or no effort.

58. BP knew or should have known, that the above statements were false when made, or were made with either no intention of performance or with a positive intention not to perform as represented.

59. BP made said statements to induce Plaintiff to rely and act on said statements to enter into the Agreement and remit the purchase price pursuant to the same.

60. Plaintiff justifiably relied on the representations made by BP in entering into the Agreement to Plaintiff's detriment.

61. As a direct and proximate cause of the foregoing misrepresentations of material fact, Plaintiff has been damaged in excess of the jurisdictional amount of this Court, including, but not limited to, lost profits, lost business opportunities, attorney's fees and costs.

62. The acts of BP at the direction of JURADO were willful, wanton, malicious, and evince a complete disregard of Plaintiff's rights.

**WHEREFORE**, Plaintiff, DOMESTIC HOLDINGS, L.C. respectfully requests judgment in its favor and against Defendants, BEAUTIFULLY PASSIVE, LLC and JURADO, jointly and severally, for compensatory damages, consequential damages, prejudgment and post-judgment interest, costs, and for further relief this Court deems just, equitable and proper..

**COUNT IV—ACTION FOR VIOLATION OF**
**THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT**

63. Plaintiff repeats and re-alleges all the allegations contained in paragraphs 1 through 39 as if fully incorporated herein.



64.    This is an action for violation of the Florida Statute §501.201, et. seq., known more commonly as the "Florida Deceptive and Unfair Trade Practices Act" ("FDUTPA").

65.    At all relevant times hereto, Plaintiff was and is a consumer as defined by section 501.203 of the Florida Statutes.

66.    At all relevant times hereto, Defendants offered and provided goods and services, as more fully incorporated, and set forth herein, and thereby were engaged in trade or commerce as defined by section 501.203 of the Florida Statutes.

67.    Defendants' practices, as more fully described herein were unfair and deceptive.

68.    Defendants' practices, as more fully described herein were willful, wanton, malicious, and evince a complete disregard of Plaintiff's rights.

69.    As a result of the Defendants' unfair and deceptive practices, Plaintiff has been damaged.

70.    Plaintiff has retained the undersigned counsel and law office to represent its interest herein and in doing so is obligated to pay said law firm a reasonable fee and costs for its services rendered in connection with this action and is entitled to the award of attorneys' fees and costs by law.

**WHEREFORE**, Plaintiff, DOMESTIC HOLDINGS, L.C. respectfully requests judgment in its favor and against Defendants, BEAUTIFULLY PASSIVE, LLC and JURADO, jointly and severally, for compensatory damages, prejudgment and post-judgment interest, attorney's fees, costs, and for further relief this Court deems just, equitable and proper.

## COUNT V—CIVIL CONSPIRACY FOR FRAUD



2424 North Federal Hwy., Ste. 200 • Boca Raton, FL 33431 • Tel. 561.939.8042 • Fax. 561.750.5083

71.     Plaintiff repeats and re-alleges all the allegations contained in paragraphs 1 through 39 as if fully incorporated herein.

72.     Defendants, BP, and JURADO, agreed to be a part of an overall scheme to defraud Plaintiff and in furtherance of the conspiracy:

    a.  Acquired $50,000.00 from Plaintiff without the intention of performing or with the positive intent not to perform as represented and contracted;

    b.  Fraudulently misrepresented BP had located spas and saloons for placement of the Cryolipolysis machines purchased by Plaintiff; and

    c.  Engaged in coercive and dilatory tactics to deceive Plaintiff and avoid suspicion regarding BP's intent to keep and deprive $50,000.00 belonging to Plaintiff.

73.     As a direct and proximate cause of the foregoing actions of the Defendants, Plaintiff has been damaged.

74.     The acts of the Defendants as more fully alleged herein were willful, wanton, malicious, and evidence a complete disregard of Plaintiff's rights.

75.     Plaintiff has retained the undersigned law office to represent its interest herein and in doing so is obligated to pay said law firm a reasonable fee and costs for its services rendered in connection with this action and is entitled to the award of attorneys' fees and costs by law.

**WHEREFORE**, Plaintiff, DOMESTIC HOLDINGS, L.C. respectfully requests judgment in its favor and against Defendants, BEAUTIFULLY PASSIVE, LLC and JURADO, jointly and severally, for compensatory damages, consequential damages, prejudgment and post-judgment interest, attorney's fees, costs, and for further relief this Court deems just, equitable and proper.

## COUNT VI—CONVERSION



2424 North Federal Hwy., Ste. 200 • Boca Raton, FL 33431 • Tel. 561.939.8042 • Fax. 561.750.5083

76.     Plaintiff repeats and re-alleges all the allegations contained in paragraphs 1 through 39 as if fully incorporated herein.

77.     Plaintiff entered into the Agreement with Defendants for the purchase of the Cryolipolysis machines and accompanying placement, installation, and training pursuant to the Agreement.

78.     Plaintiff delivered monies in the amount of $50,000.00, to Defendants, which was specifically earmarked for the items and services listed on the Agreement.

79.     Despite having received and accepted the $50,000.00, to date BP, has neither performed their obligations under the Agreement, nor have they refunded Plaintiff any of its monies despite Plaintiff's demands for the same.

80.     Defendants have failed and otherwise ignored any and all requests from Plaintiff to return the monies paid to BP.

81.     Defendants have wrongfully deprived Plaintiff of its $50,000.00, by not shipping and placing any of the items listed in the Agreement, and otherwise not performing under the terms of the Agreement.

82.     As a direct and proximate cause of the foregoing actions of the Defendants, Plaintiff has been damaged.

83.     The acts of the Defendants as more fully alleged herein were willful, wanton, malicious, and evidence a complete disregard of Plaintiff.

**WHEREFORE**, Plaintiff, DOMESTIC HOLDINGS, L.C. respectfully requests judgment in its favor and against Defendants, BEAUTIFULLY PASSIVE, LLC and JURADO, jointly and severally, for compensatory damages, consequential damages, prejudgment and post-judgment interest, costs, and for further relief this Court deems just, equitable and proper.



## COUNT VII—CONSPIRACY TO COMMIT CONVERSION

84.     Plaintiff repeats and re-alleges all the allegations contained in paragraphs 1 through 39 as if fully incorporated herein.

85.     Plaintiff entered into the Agreement with Defendants for the purchase of the Cryolipolysis machines and accompanying placement, installation, and training pursuant to the Purchase Agreement.

86.     Plaintiff delivered monies in the amount of $50,000.00, to BP and JURADO, which was specifically earmarked for the items and services listed on the Agreement.

87.     After receiving and accepting $50,000.00 from Plaintiff, BP and JURADO conspired to deprive Plaintiff of its $50,000.00 and in furtherance of their conspiracy, sent emails with false representations of material fact which were designed to avoid suspicion regarding BP and JURADO's intention to convert Plaintiff's money for their own personal use and gain.

88.     As a direct and proximate result of the foregoing actions of the Defendants, Plaintiff has been damaged.

89.     The acts of the Defendants, as more fully alleged herein, were willful, wanton, malicious, and evince a complete disregard of Plaintiff's rights.

   **WHEREFORE**, Plaintiff, DOMESTIC HOLDINGS, L.C. respectfully requests judgment in its favor and against Defendants, BEAUTIFULLY PASSIVE, LLC and JURADO, jointly and severally, for compensatory damages, consequential damages, prejudgment and post-judgment interest, costs, and for further relief this Court deems just, equitable and proper.

## COUNT VIII – PIERCING THE CORPORATE VEIL



90.     Plaintiff repeats and re-alleges all the allegations contained in paragraphs 1 through 39 as if fully incorporated herein.

91.     At all times material hereto, JURADO was the owner and officer of Defendant BP, and as such, was in control of the day to day operations of BP.

92.     JURADO organized and/or operated BP in such a manner that BP did not genuinely exist as an entity apart from JURADO, and instead BP was used as a mere instrumentality or alter ego.

93.     At all times material hereto, JURADO organized and operated BP for the purpose of committing a fraud upon people like Plaintiff.

94.     JURADO organized BP for the purpose of providing passive income generating business to investors but failed to provide any business whatsoever to Plaintiff and has utilized BP as a conduit to separate people from their funds for the personal gain of JURADO.

95.     JURADO used the assets of BP, or otherwise unjustifiably absconded with the assets of BP, without BP ever fulfilling any of its obligations under the Agreement with Plaintiff.

96.     Upon demand of the return of the funds by Plaintiff's counsel, JURADO failed to communicate any response, written or otherwise.

97.     As a direct and proximate result of JURADO organizing BP as a mere instrumentality for the purpose of defrauding individuals seeking to generate passive income, Plaintiff has been damaged.

**WHEREFORE**, Plaintiff, DOMESTIC HOLDINGS L.C., respectfully requests this Court determine that Defendant BEAUTIFULLY PASSIVE, LLC is an alter ego of Defendant KELLY JURADO and is liable to Plaintiff for any and all compensatory damages, consequential



damages, prejudgment and post-judgment interest, costs, and any further relief this Court deems just, equitable and proper.

<u>**RESERVATION TO SEEK PUNITIVE DAMAGES**</u>

Plaintiff specifically reserves its right to seek leave to amend this Complaint for punitive damages against the Defendants upon a proper showing of evidence pursuant to section 768.72 of the Florida Statutes.

Dated:  July 20, 2020.

> Respectfully submitted,
>
> K/S Attorneys at Law
>
> /s/ Tina El Fadel
>
> Tina El Fadel, Esquire
> Florida Bar # 0091039
> Attorneys for Plaintiff
> 2424 N. Federal Highway Suite 200
> Boca Raton, FL 33431
> PH: (561) 939-8042 Fax: (561) 750-5083
> tina.elfadel@ks-law.com
> eservice@ks-law.com

